IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>For the use and benefit of<br>DUNCAN TELCOM, INC., | )<br>)<br>)<br>) | |
| Plaintiff, | )<br>) | |
| v. | )<br>)<br>) | 1:16-CV-01086 |
| POND CONSTRUCTORS, INC., and<br>BERKLEY REGIONAL INSURANCE CO., | )<br>)<br>) | |
| Defendants. | ) | |

**M E M O R A N D U M   O P I N I O N**

This case is before the Court on Defendants' motion to stay litigation pending binding arbitration.  Defendants have also filed a motion for extension of time to file responsive pleadings.

**I. Background**

The facts upon which the Court relies are taken primarily from Plaintiff's Complaint.  (*See* Compl. [Dkt. 1] ("SOF")).  They are undisputed unless otherwise noted.

Plaintiff Duncan Telcom, Inc. ("Duncan") is a data communication services firm incorporated and having its principal place of business in Virginia.  Defendant Pond Constructors, Inc. ("Pond") is a Georgia corporation, with its principal place of business also in Georgia.  Pond provides

–1–

professional engineering services. Defendant Berkley Regional Insurance Company ("Berkley") is a Delaware corporation, with its principal place of business in Connecticut. Berkley underwrites insurance policies.

In September 2013, Pond entered into a contract (the "Prime Contract") with the United States Army Corps of Engineers ("Corps") to provide labor and supply materials to make fueling system improvements on United States facilities in Fort Lee, Virginia. (SOF ¶¶ 4, 14.) As a requirement of the Prime Contract, Pond provided a payment bond (the "Payment Bond"), identifying itself as the principal and Berkley as the surety. (*Id.* ¶ 5.) On March 28, 2014, Pond then subcontracted a portion of its work to Duncan, through Duncan's division of Duncan Energy Systems. (*Id.* ¶ 5.) The first subcontract agreement (the "Subcontract") stated that Pond would pay Duncan $371,868.00 to provide labor and materials. (*Id.* ¶ 17.) On May 14, 2014, Pond submitted "Subcontract Change Order No. 1" to Duncan, asking for Duncan to provide a 4500 gallon temporary storage tank for a maximum of four weeks. (*Id.* ¶ 19.) This increased the amount that Pond owed Duncan by $2,480.00, for a revised payment of $374,348.00. (*Id.*)

On June 21, 2016, an underground tank "floated," or rose completely out of the ground, independent of the actions of any workers on-site. (*Id.* ¶ 21.) This caused extensive damage

to the project site and had to be repaired in order to complete the work outlined in the Prime Contract. (*Id.*) Thus, Pond submitted Subcontract Change Order No. 2 and No. 3 in September 2014, increasing the total amount owed to Duncan to $392,600.56. (*Id.* ¶¶ 25-27.) Duncan alleges that neither subcontract change fully compensated it for the costs of labor or materials to repair the floating underground tank. (*Id.* ¶ 28.) Two additional subcontract change orders were submitted in May 2015, bringing the total owed by Pond to Duncan to $478,091.56. (*Id.* ¶¶ 30-32.) Duncan completed its subcontract work in September 2015. (*Id.* ¶ 33.)

Following the completion of its work, Duncan alleges that it submitted seven Subcontractor's Applications for Payment to Pond. (SOF ¶ 37.) Duncan also submitted separately all payroll, invoices, and daily activity reports related to all labor and materials provided by Duncan to repair the floating underground tank. (*Id.* ¶ 36.) Duncan alleges that Pond continues to owe $351,376.03 for the costs of labor and materials provided by Duncan to Pond to carry out the Prime Contract. (*Id.* ¶¶ 38, 41, 43.)

On August 23, 2016, Duncan filed a complaint in this court, alleging: (1) breach of contract against Pond; (2) breach of surety obligation/contract against Pond and Berkley; and (3) quantum meruit against Pond and Berkley. (*See* Compl. [Dkt. 1]

at 8-9.) On September 19, 2016, Pond and Berkley jointly filed a motion to stay litigation pending binding arbitration. [Dkt. 6.] They also filed a motion for extension of time to reply. [Dkt. 8.] Duncan filed a response to both motions on September 30, 2016. [Dkt. 10, 11.] Defendants submitted a response regarding the motion to stay litigation on October 4, 2016. [Dkt. 12.] These motions are now ripe for disposition.

## II. Standard of Review

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, a court must enforce an arbitration agreement that meets the following requirements: (1) is part of a written contract between the parties "if the contract or transaction involves interstate commerce;" (2) pertains to the specific dispute at issue; and (3) is "valid under general principles of contract law." *Hendrick v. Brown & Root, Inc.*, 50 F. Supp. 2d 527, 531-32 (E.D. Va. 1999) (citing 9 U.S.C. § 2). Section 3 of the FAA requires that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]

*Id.* at 532 (quoting 9 U.S.C. § 3).

Stated differently, a presumption exists in favor of arbitration. *See AT&T Techs, Inc. v. Communications Workers*, 475 U.S. 643, 650 (1986) ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'") (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)). Despite this presumption, the party requesting the stay bears the burden of proving that the claim is "referable to arbitration under the contract." *Hendrick*, 50 F. Supp.2d at 532 (citing *Carson v. Giant Food, Inc.*, 175 F.3d 325, 331 (4th Cir. 1999)). To determine whether the claim can be referred, "[o]rdinary state law" contract-formation principles control. *Id.* at 533 (citations and quotations omitted). The party requesting the stay "'must [also] justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative.'" *Wallace v. Baylouny*, No. 1:16-cv-0047, 2016 U.S. Dist. LEXIS 65122, at *14 (E.D. Va. May 17, 2016) (quoting *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983)).

### III. Analysis

**A.    Defendants' Request for a Stay Pending Arbitration**

The Subcontractor Agreement that governed Duncan and Pond's business dealings provided that:

> In the event any controversy or dispute arises between Subcontractor and Construction Manager relating to this Subcontract or breach thereof which dispute or controversy does not involve the correlative rights and duties of the Owner, then either party may seek redress of its grievances at law or in equity in any court having jurisdiction over the office of Construction Manager set forth on page 1 thereof, or **at the sole option of Construction Manager, any such dispute shall be settled by binding arbitration** filed with the office of the American Arbitration Association which is in the city where the office of Construction Manager set forth on page one is located and decided in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association.

(Subcontract Agreement (the "Agreement") [Dkt. 1] Exh. 1 at 13, ¶ 27 (emphasis added).)

Both parties appear to agree that Duncan's claims against Pond are subject to arbitration under the Agreement. Thus, the Court will grant Defendants' motion to stay Duncan's claims against Pond.

The parties disagree about whether Duncan's claims against Berkley should also be stayed pending arbitration. Defendants argue that "it is clear from the face of the Complaint that the nature of the claim asserted by Plaintiff is a dispute solely between Pond and Duncan." (Def. Mem. in Supp. [Dkt. 7] at 1.] However, one only has to read the Complaint to see that Duncan, in fact, has asserted claims against Berkley

for its role as surety as well.  (Compl. [Dkt. 1] at 7-8.) Before turning to Duncan's claims against Berkley, the Court will provide a brief history of the federal law underlying Duncan's claims.

The Miller Act (the "Act") requires a general contractor on a federal construction project to furnish a payment bond, guaranteed by a surety, "for the protection of all persons supplying labor and material in the prosecution of work provided for in the contract."  40 U.S.C. § 3131(b)(2).  The Act was designed to achieve certain policy objectives, namely, to create a cause of action for any person(s) who have not been paid in full within 90 days of last providing labor or material to a federal project.  *Id.*  Through its cause of action, the Act provides a prompt means of recovering payment.  *United States ex rel. Acoustical Concepts, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 635 F. Supp. 2d 434, 438-39 (E.D. Va. 2009) (internal citations omitted).

According to the United States Supreme Court, the Act is "highly remedial in nature" and should be given "a liberal construction and application" in order to carry out "the Congressional intent to protect those whose labor and materials go into public projects."  *U.S. for the Benefit and on Behalf of Sherman v. Carter*, 353 U.S. 210, 216 (1957) (internal citations omitted).

-7-

Based on the Miller Act, Plaintiff argues: (1) that it has not agreed to arbitrate its claims against Berkley, via written agreement or otherwise; (2) that it has independent claims against Berkley under the Act; and (3) that Berkley has different potential defenses than Pond. (Pl. Mem. in Opp. [Dkt. 11] at 2.) For these reasons, Duncan alleges that Berkley is independently liable for the money owed Duncan for its work on the federal project and, thus, the suit against Berkley should proceed. (*Id.*)

Defendants appear to argue that the Court should stay Duncan's claims against Berkley, pending arbitration, based upon: (1) the general presumption in favor of arbitration; (2) the co-extensive liability of Berkley and Pond for the alleged debts; and (3) the "voluminous authority" that supports a stay. (Def. Rep. Br. at 2, 4-5.) At the same time, Defendants concede that Berkley is not subject to the Subcontract Agreement's arbitration provision, but believe that problem to be solved by the assertion that Berkley is willing to participate voluntarily as a party to the arbitration. (*Id.* at 6.) Notably absent from Defendants' reply brief is any statement that Berkley will also agree to be bound by the resulting arbitration decision. Even if such a statement existed, however, Plaintiff clearly objects to pursuing arbitration with Berkley now.

Ultimately, the Court is unconvinced by Defendants'

—8—

arguments. While there is a general presumption in favor of arbitration, *see AT&T*, 475 U.S. at 650, the moving party "must demonstrate a pressing need for [a stay]" and that "the need . . . outweighs any possible harm to the nonmovant." *Elite Constr. Team, Inc. v. Wal-Mart Stores, Inc.*, No. CIV. JKB-14-2358, 2015 WL 925927, at *3 (D. Md. Mar. 2, 2015) (internal quotations and citation omitted). Defendants have failed to meet that burden here. Their initial memorandum provided no evidence whatsoever that Duncan's claims against Berkley should be stayed. Their reply brief did not fare much better, placing much of the analysis in the hands of conclusory statements that were devoid of evidentiary support. Far from convincing this Court that these claims are referable to arbitration, Defendants admitted that Duncan and Berkley have never agreed to arbitrate.

In addition, case law does not support Defendants' proposition that the liability of the general contractor and its surety are always the same. Although "the general rule of suretyship law" is that a "surety's liability is coextensive with that of its principal," *see United States ex rel. Walton Tech. v. Weststar Eng'g, Inc.*, 290 F.3d 1199, 1206-07 (9th Cir. 2002), in Miller Act cases, the liability of the surety is "at least coextensive with the obligations of the Act." *Id.* at 1206. Under the Act, Duncan's cause of action accrued 90 days after completion of its work. The Act permits Duncan to bring

suit at that time, not when and if Duncan recovers from Pond. Moreover, conditioning Duncan's right to recover from Berkley on the completion of the arbitration process with Pond – a process that has not yet been initiated and, under the terms of the Subcontract Agreement itself, can only be initiated by Pond – is at odds with the terms of the Miller Act itself.

Finally, it is important to point out that the decision whether to stay a federal case pending arbitration for claims that are not clearly referable to arbitration is made at the Court's discretion, "as part of its inherent power to control its own docket." *See Elite Const.*, 2015 WL 925927, at *3. Many of the cases cited by Defendants as "voluminous authority" in support of a stay are, in fact, evidence of this discretionary power at work.

Because Defendants have failed to meet their burden of proof to justify staying Duncan's claims against Berkley, this Court will deny Berkley's motion for a stay pending arbitration.

**B.        Defendants' Motion for Extension of Time to File**

Defendants have requested that this Court extend the filing deadline for responsive pleadings until 14 days after the Court rules on Defendants' motion to stay litigation pending arbitration. [Dkt. 8.] Plaintiff does not oppose this motion. [Dkt. 10.] Accordingly, Defendant Berkley's motion for an extension of time will be granted. Berkley shall file an answer

—10—

to Plaintiff's complaint on or before October 25, 2016. As noted above, Defendant Pond's motion for a stay was granted. Thus, no responsive pleading is required at this time.

### V. Conclusion

For the foregoing reasons, Defendant Pond's motion to stay litigation is granted. Duncan's claims against Pond will be stayed, pending arbitration. Pond is instructed to file a notice of arbitration by October 28, 2016. Defendant Berkley's motion to stay litigation is denied. Duncan's claims against Berkley will proceed as scheduled, taking into account Defendant Berkley's motion for an extension of time to file responsive pleadings. Defendant Berkley's motion for an extension is granted. Berkley shall file an answer to Plaintiff's complaint on or before October 25, 2016. An appropriate Order shall issue.

|  | /s/ |
|---|---|
| October 11, 2016 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |